UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GAIL LEA WILSON,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

No. 2:17-cv-1976 DB

ORDER

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[1] Plaintiff's motion argues that the Administrative Law Judge failed to employ the special psychiatric review technique, improperly rejected medical opinions, and failed to consider plaintiff's chronic fatigue syndrome. For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

////

////

---

[1] Both parties have previously consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 6 & 7.)

1

# PROCEDURAL BACKGROUND

In January of 2014, plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") alleging disability beginning on January 1, 2006. (Transcript ("Tr.") at 20, 281.) Plaintiff's alleged impairments included PTSD, depression, joint pain, ADHD, and OCD. (Id. at 132.) Plaintiff's application was denied initially, (id. at 161-65), and upon reconsideration. (Id. at 167-72.)

Thereafter, plaintiff requested a hearing and hearings were held before an Administrative Law Judge ("ALJ") on September 2, 2015, February 12, 2016, and April 20, 2016. (Id. at 38-131.) Plaintiff was represented by an attorney and testified at the administrative hearings. (Id. at 20, 38-131.) In a decision issued on June 30, 2016, the ALJ found that plaintiff was not disabled. (Id. at 32.) The ALJ entered the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2006 through her date last insured of December 31, 2012 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: degenerative joint disease of the shoulders, degenerative disc disease of the lumbar spine, depression, anxiety, PTSD, ADHD, and OCD (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) with occasional lifting, carrying, pushing, and/or pulling of 50 pounds, frequent lifting, carrying, pushing, and/or pulling of 25 pounds; sitting for eight hours out of an eight-hour day with normal breaks; standing or walking for six hours out of an eight-hour workday with normal breaks; no climbing ladders, ropes, or scaffolds; frequent stooping, crouching, crawling, and kneeling; frequent reaching in all directions; able to receive, remember, understand and carry out simple job instructions; able to frequently receive, remember, understand, and carry out detailed or complex jobs (sic) instructions; able to interact appropriately with the general public, coworkers, and supervisors; able to make

>workplace judgments; and able to make adjustments to changes in the workplace.
>
>6. Through the date last insured, the claimant was capable of performing past relevant work as an *Office Manager*. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
>7. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2006, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(f)).

(Id. at 22-31.)

On August 4, 2017, the Appeals Council denied plaintiff's request for review of the ALJ's June 30, 2016 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on September 22, 2017. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

////

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts several claims including the following three principal claims: (1) the ALJ failed to use the special psychiatric review technique; (2) the ALJ's treatment of the medical opinion evidence constituted error; and (3) the ALJ failed to evaluate plaintiff's chronic fatigue syndrome. (Pl.'s MSJ (ECF No. 15) at 13-29.[2])

**I.  Special Psychiatric Review Technique**

Where the ALJ determines the presence of a mental impairment, at step two of the sequential evaluation 20 C.F.R. § 404.1520a "requires those reviewing an application for disability to follow a special psychiatric review technique." Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

> Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and

---

[2] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

> laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." [20 C.F.R.] § 404.1520a(b)(1). The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3). Id. § 404.1520a(e)(4). In the first three areas of functional limitations—(a) activities of daily living, (b) social functioning, and (c) concentration, persistence, or pace—the ALJ must rate the degree of limitation using "the following five-point scale: None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). The ALJ must rate the fourth functional area—(d) episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more." Id. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. Id. § 404.1520a(d). If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities. See id. § 404.1520a(d)(3). The regulation specifically provides that the ALJ must document all of the special technique's steps. Id. § 404.1520a(e)(4).

Patterson v. Commissioner of Social Security Administration, 846 F.3d 656, 659 (4th Cir. 2017).

Here, the ALJ found that plaintiff had a severe mental impairment at step two of the sequential evaluation. (Tr. at 23.) The ALJ did not, however, follow the special psychiatric review technique. Instead, the ALJ analyzed plaintiff's mental impairment at step three of the sequential evaluation pursuant to the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. at 25-27.) This was a harmful error "because application of the special psychiatric review technique can result in a finding of disability at Step Two, obviating the need to complete the sequential analysis." Chahal v. Commissioner of SSA, No. 2:15-cv-1701 AC, 2016 WL 7374624, at *7 (E.D. Cal. Dec. 19, 2016).

Accordingly, plaintiff is entitled to summary judgment on the claim that ALJ failed to apply the special psychiatric review technique.

## II. Medical Opinion Evidence

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or non-examining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" Lester, 81 F.3d at 830. This is so because a treating

doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A.   Dr. Brad Auwinger**

Plaintiff first challenges the ALJ's treatment of the opinion offered by Dr. Brad Auwinger, a treating physician. (Pl.'s MSJ (ECF No. 15) at 17.) On June 17, 2015, Dr. Auwinger completed a "PHYSICAL RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE" and a "MENTAL RESIDUAL FUNCTIONAL CAPACITY QUESTIONNAIRE." (Tr. at 483-92.) The ALJ summarized Dr. Auwinger's opinion, stating:

> . . . Dr. Auwinger opined that the claimant was limited to rarely lifting 10 pounds and sitting and/or standing for less than two hours in an eight-hour workday. In addition, he opined that she can never stoop or crouch and she can rarely climb or twist. He further opined that her mental symptoms would cause her to be unable to meet competitive standards for even simple instructions and she would have serious social limitations. Lastly, he opined that the claimant would miss work more than four days per month.

(Id. at 30.)

The ALJ afforded Dr. Auwinger's opinion "little weight, because it is inconsistent with the medical evidence of record." (Id.) Specifically, the ALJ noted that in May of 2015, Dr.

6

Auwinger found that plaintiff's symptoms "did not meet chronic fatigue syndrome," but Dr. Auwinger "used her reported symptoms of fatigue to support his opinions in the RFC forms." (Id.) Furthermore, Dr. Auwinger's opinion was "more restrictive than warranted evidence of the claimant's impairments and limitations." (Id.) The ALJ then stated simply that plaintiff did not "require an assistive device" and could "perform a wide variety of daily activities" without any citation or explanation. (Id.)

It is entirely unclear, however, why a doctor's determination that a patient does not have chronic fatigue syndrome is inconsistent with the patient, nonetheless, experiencing fatigue.[3] And it is even more unclear why a potential inconsistency concerning a physical impairment would undermine a treating physician's opinion as to mental impairments.

Moreover,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity . . . required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Here, the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons for rejecting Dr. Auwinger's opinion. Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of Dr. Auwinger's opinion constituted error.

**B.     Dr. Charles Sutter**

Plaintiff next challenges the ALJ's treatment of the opinion offered by Dr. Charles Sutter, also a treating physician. (Pl.'s MSJ (ECF No. 15) at 17.) On May 9, 2009, Dr. Sutter completed

---

[3] In September of 2015, Dr. Auwinger diagnosed plaintiff with Chronic Fatigue Syndrome. (Tr. at 614.)

a Claim for Disability Insurance Benefits form.  (Tr. at 631.)  The ALJ stated that Dr. Sutter "opined that claimant is incapable of performing her regular or customary work due to poor concentration, depression, fatigue, and anxiety."  (Id. at 30.)

The ALJ afforded Dr. Sutter's opinion "little weight" because the "determination of whether an individual's RFC prevents him or her from doing past relevant work is an administrative finding that is reserved for the Commissioner."  (Id.)  To the contrary, "'[i]n disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work.'"  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).

The ALJ's decision also supported discrediting Dr. Sutter's opinion with the assertion that the opinion was "inconsistent with medical evidence, which indicates the claimant sought little mental health treatment during the insured period[.]"  (Tr. at 30.)  However, "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'"  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting Blankenship v. Bowen, 874 F.2d 1116, 1124 (6th Cir. 1989)).

Finally, the ALJ asserted that Dr. Sutter's opinion was inconsistent with evidence plaintiff "maintained self-employment in 2010."  (Tr. at 30.)  The ALJ's decision, however, explained that this self-employment consisted of "selling air purifiers at a loss," and that it did not rise to the level of substantial gainful employment.  (Id. at 23.)

Accordingly, the court finds that the ALJ failed to offer specific and legitimate, let alone clear and convincing, reasons supported by substantial evidence for rejecting Dr. Sutter's opinion. Plaintiff is, therefore, entitled to summary judgment on the claim that the ALJ's treatment of Dr. Sutter's opinion constituted error.

**C.     Nancy Laskow, MFT**

Finally, plaintiff challenges the ALJ's treatment of the opinion offered by plaintiff's treating therapist, Nancy Laskow, MFT.  (Pl.'s MSJ (ECF No. 15) at 18.)  The ALJ recounted Laskow's opinion, stating,

> In a September 17, 2015 RFC assessment form, Ms. Laskow opined that the claimant is unable to meet competitive standards for understanding and remembering simple instructions and seriously limited in her ability to carry out simple instructions. She further opined that the claimant has no useful ability to perform semi-skilled work functions.

(Tr. at 30.) The ALJ afforded Laskow's opinion "little weight." (Id.)

As a therapist, Laskow is not an acceptable medical source but instead an "other source." See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina, 674 F.3d at 1111); see also Petty v. Colvin, 954 F.Supp.2d 914, 926 (D. Ariz. 2013) ("An ALJ is free to discount testimony from other sources, but as the Commissioner concedes, he must give reasons germane to each witness for doing so.").

The ALJ rejected Laskow's opinion, in part, because Laskow was "not a licensed physician." (Tr. at 30.) That Laskow was not a licensed physician is not a reason to reject the opinion that is germane to Laskow. "Other source" opinions are by definition not rendered by licensed physicians.

The ALJ also asserted that Laskow's opinion was "more restrictive than warranted by the medical evidence, which indicates the claimant sought little mental health treatment during the insured period and she even maintained self-employment." (Id.) This is the same vague, conclusory, and unpersuasive reason given for rejecting Dr. Sutter's opinion discussed above. And the court finds this assertion illegitimate for the same reasons as stated in discussing Dr. Sutter's opinion.

For the reasons stated above, the court finds that the ALJ failed to offer a germane reason for rejecting Laskow's opinion. Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ's treatment of Laskow's opinion constituted error.

**III.    Chronic Fatigue Syndrome**

Plaintiff also argues that the ALJ failed to address plaintiff's Chronic Fatigue Syndrome, ("CFS"). (Pl.'s MSJ (ECF No. 15) at 21-22.) The record establishes that on September 28, 2015,

9

Dr. Auwinger diagnosed plaintiff with CFS. (Tr. at 614.) Social Security Ruling, ("SSR"), 14-1p provides that the Commissioner

> . . . will find that a person has a[] [Medically Determinable Impairment] of CFS if a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with the other evidence in the person's case record. Under the CDC case definition, a physician can make the diagnosis of CFS based on a person's reported symptoms alone after ruling out other possible causes for the person's symptoms. However, as mentioned, statutory and regulatory provisions require that, for evaluation of claims of disability under the Act, there must also be medical signs or laboratory findings before we may find that a person has an MDI of CFS.

SSR 14-1p; Titles II and XVI: Evaluating Claims Involving Chronic Fatigue Syndrome (CFS), 79 FR 18750-02 (2014).

Defendant argues that Dr. Auwinger's diagnosis "came 33 months after Plaintiff's insurance status expired and, thus is not relevant to the period at issue," January 1, 2006 to December 31, 2012.[4] (Def.'s MSJ (ECF No. 17) at 8.) However, to say that the evidence is not relevant is inaccurate. See generally Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011) ("[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.") (internal quotation marks and citation omitted); Barnard v. Comm'r of Soc. Sec. Admin., 286 F. App'x 989, 994 (9th Cir. 2008) ("In fact, it is not uncommon that a physician's examination completed two or more years after the insured status expiration date is considered relevant."). In fact, the ALJ's decision relied on an opinion from Dr. Auwinger generated in May of 2015—just four months prior to the September 2015 diagnosis—stating that "[i]n May 2015, Dr. Auqiner (sic) noted that the claimant's symptoms did not meet chronic fatigue syndrome[.]" (Tr. at 30.)

It may be true that even if the ALJ had evaluated plaintiff's allegations of CFS and Dr. Auwinger's September 2015 diagnosis that the ALJ could have found a reason supported by substantial evidence to find that plaintiff was still not disabled. But the court may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. See Burrell v. Colvin,

---

[4] Defendant raises this same argument with respect to the opinion of Nancy Laskow. (Def.'s MSJ (ECF No. 17) at 8.)

10

775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts."); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ failed to evaluate plaintiff's CFS.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"[5] Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not

---

[5] In light of the errors found above and the record, the court finds it unnecessary to reach plaintiff's remaining claims. See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not address Plaintiff's remaining contentions.").

11

remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, given the ALJ's numerous errors, the lengthy period of disability at issue, and the conflicting nature of the evidence found in the record, the court cannot say the further administrative proceedings would serve no useful purpose. This matter, therefore, will be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's amended motion for summary judgment (ECF No. 15) is granted;
2. Defendant's amended cross-motion for summary judgment (ECF No. 17) is denied;
3. The Commissioner's decision is reversed;
4. This matter is remanded for further proceedings consistent with the order; and
5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated: February 15, 2019

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\wilson1976.ord

12